**O**

# United States District Court
# Central District of California

JIM CLEMMENS et al.,

                Plaintiffs,

    v.

AMERICAN HONDA MOTOR COMPANY,

                Defendant.

Case № 2:24-cv-09728-ODW (SKx)

**ORDER GRANTING MOTION TO DISMISS [24]**

## I.    INTRODUCTION

Plaintiffs Jim Clemmens, Terri Hernandez, and Marie Toussaint bring this putative class action against American Honda Motor Company ("Honda") in connection with Honda-manufactured vehicles they purchased that suffer from a paint defect.  (Compl. ¶ 2, ECF No. 2.)  Honda moves to dismiss the Complaint.  (Mot. Dismiss ("Mot." or "Motion"), ECF No. 24.)  For the reasons discussed below, the Court **GRANTS** the Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.    BACKGROUND[2]

Clemmens, Hernandez, and Toussaint each purchased vehicles from authorized Honda dealers.  (Compl. ¶¶ 113, 123, 134.)  In late 2013, Toussaint bought a new 2014 Acura MDX in White Diamond Pearl from a New Jersey dealer.  (*Id.* ¶ 134.)  In late 2017, Hernandez leased a new 2017 Acura MDX in White Diamond Pearl from a California dealer and then purchased the vehicle in late 2020.  (*Id.* ¶ 123.)  In 2019, Clemmens purchased a certified pre-owned 2016 Acura MDX in White Diamond Pearl from a Pennsylvania dealer.  (*Id.* ¶ 113.)

Around the summer of 2018, Toussaint noticed a defect which caused her vehicle's "white paint to inevitably fail, peel, delaminate . . . , bubble, and flake" (the "Paint Defect").  (*Id.* ¶¶ 2, 138.)  The Paint Defect affected the area near the sunroof of her vehicle, and an Acura dealership agreed to repaint the area.  (*Id.* ¶ 138.)  Around the summer of 2024, Toussaint noticed the same defect near the rear/tailgate area of her vehicle.  (*Id.* ¶ 140.)  This time, the Acura dealership and Acura customer relations refused to repair the vehicle.  (*Id.* ¶¶ 142–43.)

In 2024, Clemmens and Hernandez also noticed Paint Defects on their vehicles.  (*Id.* ¶¶ 117, 127.)  Clemmens and Hernandez each reported the defect to authorized Acura dealers, who informed them that the repair was not covered by Honda's warranty.  (*Id.* ¶¶ 119, 129.)  Each also spoke to an Acura customer relations representative, who acknowledged seeing the defect in other vehicles, but refused to cover the costs of repairing the vehicles.  (*Id.* ¶¶ 120–21, 129–31.)

Honda markets the Class Vehicles[3] to consumers.  (*Id.* ¶ 29.)  For example, in 2014, Honda described the 2014 Acura MDX as "a luxury experience for mankind"

[2] All factual references derive from the Complaint or attached exhibits, unless otherwise noted.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that well-pleaded factual allegations are accepted as true for purposes of a motion to dismiss).

[3] Class Vehicles are all model years from 2013 to the present of the following vehicles: (1) Acura MDX in White Diamond Pearl; (2) Honda Odyssey in White Diamond Pearl; (3) Honda Odyssey in Taffeta White; (4) Honda Pilot in Taffeta White; (5) Honda Fit in White Orchid Pearl; (6) Honda Fit in Bellanova White; (7) Honda HR-V in White Orchid Pearl; and (8) Honda HR-V in Bellanova White.  (Compl. ¶ 1.)

that "communicates a look of sophistication and elegance." (*Id.* ¶¶ 30–31.) That same year, Honda described the seven available colors as "complimenting the MDX's sophisticated and dynamic body shape." (*Id.* ¶ 36.) Based on these and other representations, consumers, including Clemmens, Hernandez, and Toussaint, expected that the Class Vehicles' paint would last well over ten years. (*Id.* ¶ 43.)

However, the Class Vehicles suffer from the Paint Defect. (*Id.* ¶ 49.) On June 1, 2019, Honda issued a Technical Service Bulletin ("TSB"), which provides instructions for repairing a vehicle when a manufacturer identifies a recurring issue. (*Id.* ¶¶ 73–74 & n.19.) In the TSB, Honda extended the warranty for White Diamond Pearl paint in 2014 to 2016 MDX vehicles. (*Id.* ¶ 74.) It also informed consumers to "[i]nspect the vehicle and, if necessary, have a" certified body shop repaint after obtaining Honda's approval. (*Id.*)

Honda knew about the Paint Defect as late as 2012, before selling or leasing the vehicles to Toussaint, Hernandez, and Clemmens. (*Id.* ¶¶ 78, 107.) But Honda did not disclose the defect to consumers. (*Id.* ¶¶ 107–112.) "Honda made incomplete and false representations" and "failed to disclose that the latent Paint Defect was a virtual inevitability which would severely impact the Class Vehicles' value, resale potential, and could result in costly repairs." (*Id.* ¶ 109.) Before buying their vehicles, Clemmens, Hernandez, and Toussaint "viewed marketing materials that touted the quality, durability, and value of Honda's vehicles," including the purchased vehicle, and personnel at the dealer "emphasized the quality, durability, and aesthetic features" of the vehicle. (*Id.* ¶¶ 114, 124, 135.) Each relied on this information in deciding to buy their respective vehicles, and the availability of the MDX in White Diamond Pearl was a material factor in their respective decisions. (*Id.* ¶¶ 115, 125, 136.)

Based on these allegations, Clemmens, Hernandez, and Toussaint initiated this putative class action against Honda. They define a "National Class" consisting of "[a]ll persons or entities in the United States that purchased or leased a Class Vehicle." (*Id.* ¶ 183.) They also define a "California Class," "New Jersey Class," and

"Pennsylvania Class," consisting of "[a]ll persons or entities in" the class's state "that purchased or leased a Class Vehicle." (*Id.*)

Clemmens, Hernandez, and Toussaint bring the following causes of action individually and on behalf of the National Class: (1) violation of California's Unfair Competition Law ("UCL"), California Business and Professions Code section 17200, *et seq.*; (2) violation of California's False Advertising Law ("FAL"), California Business and Professions Code section 17500, *et seq.*; (3) violation of the Consumers Legal Remedies Act ("CLRA"), California Civil Code section 1770, *et seq.*; (4) breach of express warranty; (5) fraudulent concealment; and (6) unjust enrichment. (*Id.* ¶¶ 198–235, 258–300.)   Clemmens also brings a claim for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), Pennsylvania Trade and Commerce Code, section 201-2, individually and on behalf of the Pennsylvania Class. (*Id.* ¶¶ 236–47.)  Lastly, Toussant brings a claim for violation of the New Jersey Consumer Fraud Act ("NJCFA") section 56:8-1 *et seq.*, individually and on behalf of the New Jersey Class. (*Id.* ¶¶ 248–57.)

Honda moves to dismiss for lack of standing and failure to state a claim.  (Mot.) The Motion is fully briefed.  (Opp'n, ECF No. 30; Reply, ECF No. 31.)

### III.    LEGAL STANDARD

**A.    Rule 12(b)(1)**

Under Federal Rule of Civil Procedure ("Rule") 12(b)(1), a district court must dismiss a complaint when the court lacks subject matter jurisdiction, which includes when a plaintiff lacks constitutional standing.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Because standing . . . pertain[s] to a federal court's subject-matter jurisdiction under Article III, [it is] properly raised in a motion to dismiss under [Rule] 12(b)(1).").  To satisfy Article III standing, a plaintiff must show that (1) he has suffered an injury in fact that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged actions of the defendant; and (3) it is likely, as opposed to merely speculative, that the

injury will be redressed by a favorable decision.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–39 (2016); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  The party attempting to invoke a court's jurisdiction bears the burden of proof for establishing jurisdiction.  *See Sopcak v. N. Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995).

**B.    Rule 12(b)(6)**

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  To survive a dismissal motion, a complaint need only satisfy the "minimal notice pleading requirements" of Rule 8(a)(2).  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).  Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Iqbal*, 556 U.S. at 678 (holding that a claim must be "plausible on its face" to avoid dismissal).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.  A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).  However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Ultimately, there must be sufficient factual allegations "to give fair notice and to enable the opposing party to defend itself effectively," and the "allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair

to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

When a plaintiff's claims are fraud-based, Rule 9(b)'s heightened pleading requirements apply. *Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989). Rule 9(b) provides, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "A pleading satisfies Rule 9(b) if it identifies 'the who, what, when, where, and how' of the misconduct charged." *MetroPCS v. SD Phone Trader*, 187 F. Supp. 3d 1147, 1150 (S.D. Cal. 2016) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). The plaintiff must "set forth more than the neutral facts necessary to identify the transaction [and] must set forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1106 (emphasis omitted).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear that any amendment could not save the complaint. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV.    DISCUSSION

Honda moves to dismiss each of Plaintiffs' claims.[4]  (Opp'n 5–23.)

### A.    Statute of Limitations

Honda moves to dismiss most of Plaintiffs' claims for failing to bring them within the applicable statute of limitations period.[5]  (Mot. 22–23.)  Plaintiffs counter that the delayed discovery rule postponed accrual of these claims.  (Opp'n 21–23.)

---

[4] As the Court dismisses these claims for the reasons described in this Order, the Court does not reach Honda's other arguments for dismissal.

[5] Honda does not move to dismiss Clemmens's UTPCPL and warranty claims and Hernandez's warranty claim on this basis.  (Mot. 22–23.)

Plaintiffs also argue that Honda's "fraudulent concealment and equitable estoppel tolled the accrual of their claims until they discovered the Paint Defect in 2024." (*Id.* at 21 n.18.)

### 1.    *Discovery Rule*

"[T]he discovery rule postpones accrual of a claim until 'the plaintiff discovers, or has reason to discover, the cause of action.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008) (*quoting Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999)) (California law); *accord Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (New Jersey law); *Adams v. Zimmer US, Inc.*, 943 F.3d 159, 163 (3d Cir. 2019) (Pennsylvania law).  To benefit from the discovery rule, the plaintiff "must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005).  "[W]hen a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993)

Clemmens and Hernandez plausibly allege that the discovery rule applies. Clemmens alleges that he "noticed that his Acura MDX's paint was failing, bubbling, peeling, delaminating and/or flaking" around Summer 2024.  (Compl. ¶ 117.) Hernandez alleges that she noticed the same with her vehicle in Spring 2024.  (*Id.* ¶ 127.)  Additionally, Clemmens and Hernandez allege that they "had no realistic ability to discern that the[ir vehicles] were defective until—at the earliest—after the Paint Defect caused their [vehicles'] paint to prematurely fail, bubble, peel, delaminate, and flake." (*Id.* ¶ 181.)  These allegations support that Clemmens's and Hernandez's claims began accruing in 2024.

Conversely, Toussaint has not plausibly alleged that the discovery rule applies to her claims, and her allegations establish that her claims are time-barred.

Toussaint's NJCFA, fraudulent concealment, and unjust enrichment claims have a six-year limitations period. *Kaplan v. Gen. Elec. Co.*, No. 2:22-CV-05296 (BRM) (ESK), 2023 WL 4288157, at *4 (D.N.J. June 30, 2023). Her warranty claim has a four-year limitations period. *Id.* The limitations period for UCL violations is four years, and the period for FAL and CLRA violations is three years. *Shin v. Sanyo Foods Corp. of Am.*, No. 2:23-cv-10485-SVW (MRWx), 2024 WL 4467603, at *5 (C.D. Cal. Aug. 13, 2024). Toussaint purchased her vehicle in "late 2013" and noticed that her Acura MDX's paint was failing, bubbling, peeling, delaminating and/or flaking" in Summer 2018. (Compl. ¶¶ 134, 138.) Therefore, absent some exception, the statute of limitations for the last of her claims expired in Summer 2024, but she did not initiate this legal action until November 2024.

Toussaint alleges she "again noticed that her Acura MDX's paint was failing, bubbling, peeling, delaminating and/or flaking" in Summer 2024. (*Id.* ¶ 140.) In the Opposition (though not in the Complaint), Toussaint asserts that she "could not have reasonably discovered that Defendant's 2018 repair was inadequate before Summer 2024," so the discovery rule delayed accrual of her claims. (Opp'n 22.) That may be true, but Toussaint does not explain why this would delay the running of the statute of limitations concerning claims based on Honda's misrepresentations and omissions from when Toussaint purchased the vehicle in 2013 (as opposed to, for example, misrepresentations and omissions in connection with the repair). Accordingly, the discovery rule does not delay accrual of Toussaint's claims.

### 2. *Fraudulent Concealment*

Toussaint also argues, in a footnote without explanation, that fraudulent concealment tolled the statute of limitations. (Opp'n 21 n.18.) The statute of limitations "can be tolled if a plaintiff demonstrates that defendant engaged in some form of fraudulent concealment." *Hardy v. Volkswagen Grp. of Am., Inc.*, No. CV 24-8251 (KMW) (SAK), 2025 WL 1409820, at *15 (D.N.J. May 14, 2025) (New Jersey law); *accord Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1131 (C.D Cal.

2010) (California law).  "To adequately plead fraudulent concealment for purposes of tolling, a plaintiff must demonstrate: (1) wrongful concealment by the defendant, resulting in (2) plaintiff's failure to discover the operative facts forming the basis of her cause of action during the limitations period (3) despite the exercise of diligence." *Hardy*, 2025 WL 1409820, at *15 (cleaned up); *accord Yumul*, 733 F. Supp. 2d at 1131.  A plaintiff must plead these elements "with particularity pursuant to Rule 9(b)." *Harris v. Bristol-Myers Squibb Co.*, No. CIV.A. 11-6004 FLW, 2013 WL 5407193, at *4 (D.N.J. Sept. 25, 2013).  As to the first factor, a plaintiff "must allege the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Id.* (cleaned up).  "To satisfy this standard," a plaintiff must plead "the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id.*

Toussaint alleges that "Honda has known of the Paint Defect in the Class Vehicles since at least late 2012, and has concealed from, or failed to, notify [her] . . . of the full and complete nature of the Paint Defect, even when [she] directly asked about it." (Compl. ¶ 177.)  She further alleges that "Honda continues to conceal the Paint Defect to this day." (*Id.*)  However, Toussaint fails to set forth sufficient factual allegations to support the application of the fraudulent concealment doctrine *after* she noticed the Paint Defect in 2018.  Toussaint does not point to any allegations (for example, conversations with Honda), showing Honda's fraudulent concealment *as to her* since her 2018 discovery.  And, even if she did not understand "the full and complete nature of the Paint Defect," (*id.* ¶ 177), she presents no allegations or argument addressing how due diligence would not have led her to discover the operative facts for her cause of action during the limitations period.  To the contrary, she alleges that Acura MDX owners complained online about similar issues with their vehicles, complaints she could have discovered had she exercised diligence after being put on notice that there was an issue with her car.  (*See, e.g.*, *id.* ¶¶ 68–69.)

Accordingly, Toussaint has not pleaded a basis for the application of the fraudulent concealment doctrine to toll the statute of limitations as to her claims.

### 3.    *Equitable Estoppel*

Last, Toussaint, again in a footnote with no explanation, contends that equitable estoppel prevents Honda from raising a statute of limitations defense.  (Opp'n 21 n.18.)  "[A] defendant may be estopped from asserting a statute of limitations defense if it engages in conduct that is calculated to mislead the plaintiff into believing that it is unnecessary to seek civil redress."  *Raines v. Lappin*, No. CIV 11-5681 RBK/AMD, 2013 WL 3283930, at *4 (D.N.J. June 26, 2013) (internal quotation marks omitted) (New Jersey law); *accord Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1101 (C.D. Cal. 2009) (California law).  The defendant must have "actively misled" the plaintiff and this "deception" must have "caused the plaintiff's non-compliance with the limitations period."  *Raines*, 2013 WL 3283930, at *4 (emphasis omitted).  The "plaintiff must also exercise due diligence to preserve his or her claim despite any misleading or otherwise injurious action taken by the defendant."  *Id.*  Toussaint "appears to conflate the principles of equitable estoppel with the very nature of [her] claim."  *Gupta v. Perez*, 101 F. Supp. 3d 437, 457 (D.N.J. 2015).  Toussaint does not point to any allegation about Honda's conduct that actively misled her to not asserting her claims within the statute of limitations period.  Accordingly, Toussaint has not pleaded a basis for equitable estoppel to defeat the statute of limitations bar.

In sum, Clemmens and Hernandez sufficiently allege that the statute of limitations does not bar their claims based on the discovery rule.  However, Toussaint fails to plausibly allege that her claims survive the statute of limitations.  Accordingly, the Court **DISMISSES** all of Toussaint's claims.  As Toussaint may be able to offer allegations that plausibly support tolling, estoppel, or delayed accrual, this dismissal is **with leave to amend**.

## B.    Common Law Claims

Honda raises numerous challenges to Plaintiffs'[6] claims for breach of express warranty, fraudulent concealment, and unjust enrichment.  Plaintiffs bring each of these claims on behalf of themselves and the proposed National Class.  (Compl. ¶¶ 259, 275, 290.)  Honda argues that these claims must be dismissed to the extent Plaintiffs seek to assert these claims under state law from states in which they do not reside.  (Mot. 5.)  Additionally, Honda contends that the claims should be dismissed for Plaintiffs' failure to specify which states' laws apply.  (*Id.* at 6.)[7]

There must be a representative plaintiff for each state's laws asserted in a complaint.  *See, e.g.*, *Slattery v. Athena Cosms., Inc.*, 740 F. Supp. 3d 1009, 1020 (C.D. Cal. 2024) ("[M]ulti-state consumer protection claims must be dismissed because [p]lainiff lacks standing to bring state law claims on behalf of out-of-state class.")  Plaintiffs do not appear to contest this proposition, (*see* Opp'n 6); instead they argue that each class member can bring these claims under California law.  (*Id.*)

Regardless of whether members outside of the proposed California Class can assert claims under California law, a "group of plaintiffs cannot bring a claim on behalf of a 'nationwide' class without alleging the applicable states' laws." *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 760 (C.D. Cal. 2022) (collecting cases).  To that end, in their Opposition, Plaintiffs assert that they "have specified that California law should apply to their claims."  (Opp'n 8.)  But Plaintiffs do not, as they must, actually "allege which state law governs" these claims in the Complaint.  *Kim v. Walmart, Inc.*, No. 2:22-cv-08380-SB (PVCx), 2023 WL 4316786, at *3 (C.D. Cal. Mar. 14, 2023).  Therefore, dismissal of Plaintiffs' breach

---

[6] Toussaint, Clemmens, and Hernandez base certain of their claims on identical theories.  To the extent these claims overlap, the remaining analysis applies equally to Toussaint's claims, even though the Court dismisses all of Toussaint's claims based on the statute of limitations.

[7] In the Opposition, "Hernandez voluntarily dismisses her breach of express warranty claim." (Opp'n 18 n.11.)  Accordingly, the Court **DISMISSES without prejudice** Hernandez's claim for breach of express warranty.  *See* Fed. R. Civ. P. 41(a)(1)(A)(i).

of express warranty, fraudulent concealment, and unjust enrichment claims is appropriate.

Honda asserts other grounds for dismissal of the breach of express warranty, fraudulent concealment, and unjust enrichment claims. The Court will not address each of these grounds until Plaintiffs allege which law governs, as the adequacy of Plaintiffs' allegations may turn on which law applies. *See Meltzer v. Mazda Motor of Am., Inc.*, --- F. Supp. 3d ---, 2025 WL 1399982 (C.D. Cal. Apr. 2, 2025) ("[U]ntil Plaintiffs indicate which States' laws support their claim, the Court cannot assess whether the claim has been adequately plead[ed].").

Accordingly, the Court **DISMISSES with leave to amend** Plaintiffs' claims for fraudulent concealment and unjust enrichment, and Clemmens's and Toussaint's claims for breach of express warranty. If Plaintiffs replead these claims, they must identify which state law applies. Plaintiffs are not permitted to add a claim under a state's law where no representative plaintiff can individually assert a claim. *See Slattery*, 740 F. Supp. 3d at 1020.

## C. Fraud-Based Claims

Honda also moves to dismiss Plaintiffs' remaining claims, all of which sound in fraud. (Mot. 7–17.) These claims are for violations of the UCL, FAL, CLRA, and UTPCPL.[8]

### 1. *Knowledge*

For claims premised on misrepresentations and omissions, Plaintiffs must allege that Honda had pre-sale knowledge of the Paint Defect. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012). While allegations regarding misrepresentations and omissions are subject to Rule 9(b)'s heightened pleading standard, allegations as to pre-sale knowledge are not. *Clark v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108, 1123 (C.D. Cal. 2021). In the Complaint, Plaintiffs allege

---

[8] Toussaint also brings a claim under the NJCFA, which, as explained, the Court dismissed for failure to raise within the statute of limitations period.

that Honda had pre-sale knowledge of the Paint Defect from four sources: (1) prior TSBs from Honda involving similar paint issues; (2) internal paint testing; (3) consumer complaints; and (4) a prior settled Canadian class action addressing a substantially similar paint issue.  (Compl. ¶ 78.)

Plaintiffs allege that Honda had pre-sale knowledge of the Paint Defect based on prior TSBs.  (*Id.* ¶¶ 89–96.)  As discussed, on June 1, 2019, Honda issued a TSB that extended the warranty for White Diamond Pearl paint in 2014 to 2016 MDX vehicles.  (*Id.* ¶ 74.)  It also informed consumers to "[i]nspect the vehicle, and if necessary, have a" certified body shop repaint after obtaining Honda's approval.  (*Id.*)  On August 29, 2019, Honda issued two more TSBs, relating to Taffeta White, White Orchid Pearl, and Bellanova White paint on certain vehicles.  (*Id.* ¶¶ 75–76.)  Plaintiffs also reference a 2008 TSB describing "a substantially similar paint peeling issue" in Dark Blue 2003 to 2005 Honda Odysseys.  (*Id.* ¶¶ 91–93.)  They also cite TSBs from 2012 to 2014 addressing "Hood Paint Cracking" and "Roof and Trunk Paint Chalking and Clouding" in Black, Blue, Gray, Metal, and Titanium 2006 to 2013 Honda Civics.  (*Id.* ¶¶ 94–96.)

Honda contends that the Plaintiffs cannot rely on TSBs that do not concern the year/make/model vehicle owned by any of the Plaintiffs.  (Mot. 12.)  However, at the pleadings stage, "TSBs issued for other vehicles can support a plausible inference of knowledge when the other vehicles had the same defective component as the vehicle at issue."  *Browning v. Am. Honda Motor Co.*, No. 20-CV-05417-BLF, 2022 WL 5287775, at *3 (N.D. Cal. Oct. 6, 2022) (collecting cases); *see, e.g.*, *Parrish v. Volkswagen Grp. of Am., Inc.*, 463 F. Supp. 3d 1043, 1056 (C.D. Cal. 2020) (finding fact that TSBs addressed vehicles other than the plaintiff's vehicle "not . . . material," where the plaintiff "allege[d] both models had the same [d]efect").  Plaintiffs allege that the 2008 TSB concerned vehicles painted in the same Alabama factory as most of the Class Vehicles and that these vehicles "use[d] a substantially similar defective type of paint and/or substantially similar defective manufacturing process."  (Compl.

¶ 93.)  And they allege that, based on Honda's experiences relating to the 2008 TSB, "Honda fully understood the nature and causes of the Paint Defect."  (*Id.*)  Further, Plaintiffs allege that even though "Honda attempted to ameliorate the paint peeling issue," it "understood, prior to vehicle sales to Plaintiffs . . . that it did not fully remedy the issue."  (*Id.*)  That the vehicles "suffer[ from] a substantially similar paint defect," (*id.*), supports a plausible inference that Honda had pre-sale knowledge of the defects, *see Salas v. Toyota Motor Sales, U.S.A., Inc.*, No. 2:15-cv-08629-FMO (Ex), 2016 WL 7486600, at *2, 10 (C.D. Cal. Sept. 27, 2016) (crediting TSBs concerning defects "identical or substantially similar to those used in the subject" vehicles).

Accordingly, Plaintiffs have sufficiently alleged Honda had pre-sale knowledge of the Paint Defect as to each Plaintiff.  Therefore, the Court need not address whether the internal testing, consumer complaints, or the Canadian class action support pre-sale knowledge.

### 2.    *Misrepresentation*

In addition to Honda's pre-sale knowledge of the Paint Defect, Plaintiffs must allege a misrepresentation or omission under Rule 9(b)'s heightened pleading standard.  *See, e.g.*, *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (applying Rule 9(b) to CLRA, FAL, and UCL claims grounded in fraud); *Lindsley v. Am. Honda Motor Co., Inc.*, No. CV 16-941, 2017 WL 2930962, at *7 (E.D. Pa. July 7, 2017) (same as to UTPCPL fraud claim).

In the Complaint, Plaintiffs allege that "Honda misrepresented . . . material information regarding the Class Vehicles' design, aesthetic, value, and durability without indicating to consumers in any way that the Class Vehicle would almost certainly experience the Paint Defect."  (Compl. ¶ 205.)  Plaintiffs assert that they have alleged "the who, what, when, where, and how" of these misrepresentations. *Vess*,  317 F.3d  at 1106;  (*see*  Opp'n 8–9.)    They  argue  that  Honda  made misrepresentations about the vehicles' "value, style, and durability" from 2012 to the present "in all marketing and authorized dealerships."  (Opp'n 8.)

To support that they have adequately alleged misrepresentations, Plaintiffs cite to allegations about statements Honda made in advertisements about the 2014 Acura MDX.  (Opp'n 8 (citing Compl. ¶¶ 29–37).)  However, Plaintiffs "do not identify the promotional materials on which [they] relied when purchasing their vehicles."  *Benkle v. Ford Motor Co.*, No. 8:16-cv-001569-DOC (JCGx), 2017 WL 9486154, at *4 (C.D. Cal. Dec. 22, 2017).  Nowhere in the Complaint do Plaintiffs allege that they relied on *these* marketing materials.  In fact, these materials do not even refer to the vehicles Clemmens and Hernandez purchased.  (*See* Compl. ¶¶ 113, 123.)  Rather, Plaintiffs allege, without specificity, that they "viewed marketing materials that touted the quality, durability, and value of Honda's vehicles" and a sales representative or other personnel at the dealership "emphasized the quality, durability, and aesthetic features of the" vehicles they purchased.  (*Id.* ¶¶ 114, 124, 135.)  Each Plaintiff also alleges they "relied on the information . . . conveyed in those marketing materials, as well as by the sales representative" in deciding to buy their vehicles.  (*Id.* ¶¶ 115, 125, 136.)

But Plaintiffs do not identify the marketing materials they viewed and what the salesperson said about the vehicles.  These deficiencies are compounded by Plaintiffs' failure to specify "when" Honda made these statements beyond the overly broad "2012 to present" timeframe.  (*See* Compl. ¶ 173; Opp'n 8.)   This defeats their misrepresentation claims.  *Compare In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*, 483 F. Supp. 3d 838, 843 (C.D. Cal. 2020) (finding allegations insufficient where plaintiff references a "marketing brochure, but does not allege that [he] viewed and relied upon it"), *with In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Pracs. & Prods. Liab. Litig.*, 890 F. Supp. 2d 1210, 1220 (C.D. Cal. 2011) (finding allegations sufficient where plaintiff "identified specific statements in the brochures, marketing materials, and advertisements for each of their and the putative class members' vehicles" and "allege[d] that they read and relied on those statements in connection with purchasing their vehicles").

1   Accordingly, to the extent Plaintiffs allege Honda made affirmative
2   misrepresentations, those claims are **DISMISSED with leave to amend**.

3       3.   *Omissions*

4       Plaintiffs contend that they have also alleged Honda omitted information about
5   the Paint Defect that it was required to disclose to Plaintiffs.  (Opp'n 8–9.)

6           a.  California

7       To plead UCL, FAL, and CLRA claims based on omission, a plaintiff must
8   allege that the defendant had a duty to disclose the allegedly omitted information or
9   that the omission is contrary to a representation made by the defendant.  *Oddo v.*
10  *Arocaire Air Conditioning & Heating*, No. 2:18-cv-07030-CAS (Ex), 2020 WL
11  5267917, at *24 (C.D. Cal. May 18, 2020).

12      The parties agree that the relevant components of the standard are (1) whether
13  the omission was material; (2) whether the defect was central to the product's
14  function; and (3) the four *LiMandri* factors.  (Mot. 13; Opp'n 11–12); *see Hodsdon v.*
15  *Mars, Inc.*, 891 F.3d 857, 863 (9th Cir. 2018).  The *LiMandri* factors are: (1) the
16  defendant is the plaintiff's fiduciary; (2) the defendant has exclusive knowledge of
17  material facts not known or reasonably accessible to the plaintiff; (3) the defendant
18  actively conceals a material fact from the plaintiff; or (4) the defendant makes partial
19  representations that are misleading because some other material fact has not been
20  disclosed.  *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997).

21      However, the parties disagree about whether a plaintiff must plead all
22  components of the standard or only one.  Honda argues the test is *conjunctive*,
23  meaning that a plaintiff must plead (1) that the omission was material, (2) that the
24  defect was central to the product's function, *and* (3) one of the *LiMandri* factors.
25  (Mot. 13.)  Plaintiffs assert that the test is *disjunctive*, meaning that a plaintiff must
26  plead allege *either* (1) that the defect presented a safety issue; (2) that the defect
27  related to the central product function; *or* (3) that the defect meets one of the
28  *LiMandri* factors.  (Opp'n 12.)

Both parties cite cases supporting their positions. *Compare In re Natera Prenatal Testing Litig.*, 664 F. Supp. 3d 995, 1008 (N.D. Cal. 2023) (conjunctive test), *with In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1101 (N.D. Cal. 2021) (disjunctive test). Ninth Circuit precedent—and the Ninth Circuit's application of its precedent—supports Honda's position that the test is conjunctive. In *Wilson v. Hewlett-Packard Co.*, the Ninth Circuit held that the plaintiffs failed to state a claim where they did not "allege that the design defect caused an unreasonable safety hazard." 668 F.3d 1136, 1143 (9th Cir. 2012). Later, in *Hodsdon*, the Ninth Circuit recognized that "recent California cases do cast doubt on whether *Wilson*'s safety hazard requirement applies in all circumstances." 891 F.3d at 861–62. Nevertheless, the *Hodsdon* court did not decide whether those California cases "effectively overruled *Wilson*," because the plaintiffs did not state a claim under any of the proposed tests. *Id.* at 862. Instead, while the Ninth Circuit recognized that California cases "are somewhat vague about the test for determining whether a defendant has a duty to disclose," it held that those cases find a duty to disclose when "the plaintiff alleges that the omission was material," "plead[s] that the defect was central to the product's function," allege[s] one of the four *LiMandri* factors." *Id.* at 863.

In applying this test, the *Hodsdon* court noted the plaintiffs' argument that the defendant has a duty to disclose based on *LiMandri*'s second factor. *Id.* Without deciding whether the plaintiffs adequately alleged this factor, the court held that the plaintiffs did not allege a duty to disclose because they failed to plead that the omissions concerned a "physical product defect relating to the central function of the" product or a "safety defect." *Id.* at 865. If the test were disjunctive, as Plaintiffs propose, then, after deciding that the plaintiffs did not plead facts to meet the central function test, the Ninth Circuit would have had to decide whether the plaintiff had pleaded any of the *LiMandri* factors. But that is not what the court did. Instead, it did not analyze the *LiMandri* factors because there was no safety defect or defect relating

to a central function.  The only question the Ninth Circuit left open was whether a
plaintiff must always plead a safety hazard, or whether it can sometimes plead a
central function.  *See id.* at 861–62.  Indeed, the Ninth Circuit referred to the central
function test as a "crucial element" under California cases.  *Id.* at 863.  Since
*Hodsdon*, the Ninth Circuit—albeit in unpublished cases—has consistently confirmed
that the three-prong test is conjunctive.  *See, e.g.*, *Knowles v. ARRIS Int'l PLC*, 847 F.
App'x 512, 514 (9th Cir. 2021) (affirming summary judgment in favor of defendant
where plaintiff did not raise a material issue of fact that the defect relating to "a
critical or integral function" of the product); *In re Intel Corp. CPU Mktg., Sales Pracs.
& Prods. Liab. Litig.*, No. 22-35652, 2023 WL 7211394, at *1 (9th Cir. Nov. 2, 2023)
(recognizing *Hodsdon* court held all three factors are needed).

Accordingly, to allege a duty to disclose, Plaintiffs must allege (1) whether the
omission was material; (2) whether defect was central to the product's function; *and*
(3) the four *LiMandri* factors.  Plaintiffs do not satisfy this test because they fail to
plausibly allege that the Paint Defect central to the vehicles' function.

Honda argues that Plaintiffs allege only a "cosmetic issue" with their vehicles,
which does not relate to the "central function" of the vehicle.  (Mot. 14.)  Plaintiffs
counter that they do not simply allege cosmetic issues but assert that the Paint Defect
"expos[es] the exterior to rust and corrosion."  (Opp'n 13.)

"There ha[s] been some dispute as to whether the 'central function' analysis
requires the defect to render the product incapable of use by any consumer or whether
the defect need only prevent or seriously impair the full use of the product."  *In re
Apple Processor Litig.*, No. 18-cv-00147-EJD, 2022 WL 2064975, at *8 (N.D. Cal.
June 8, 2022), *aff'd*, No. 22-16164, 2023 WL 5950622 (9th Cir. Sept. 13, 2023)  This
Court has already weighed in and held that the "central function" test does not require
a plaintiff to plead that the defect "render[s] a product incapable of use."  *Bettles v.
Toyota Motor Corp.*, No. 2:21-cv-07560-ODW (AFMx), 2022 WL 1619337, at *4

(C.D. Cal. May 23, 2022).   Rather, a plaintiff must only plausibly allege that the defect "relate[s] to the central function of the [v]ehicle."   *Id.* at 3.

The parties do not propose a description of the "central function" of a car.   It is fair to say, however, that the central function is to transport people or things from one place to another.   This does not necessarily mean that a car manufacturer only has a duty to disclose when a defect prevents or delays this transportation.   For example, courts within this District, including this one, have found a triable issue of fact as to whether an issue with a car's HVAC related to the central function.   *See, e.g.*, *Bettles*, 2022 WL 1619337, at *3 (finding triable issue where defect "exposes drivers and occupants to foul and noxious odors and/or an associated safety hazard from mold growth"); *Hadi v. Toyota Motor Corp.*, No. 2:23-cv-09613-JLS (SSCx), 2025 WL 841804, at *5 (C.D. Cal. Jan. 6, 2025) (finding plaintiffs adequately alleged HVAC defect affecting "air quality and electrical systems" relates to the central function).

Here, Plaintiffs allege that "the quality of a vehicle's exterior paint is integral to a vehicle's use and function and safety by preventing rust and corrosion."   (Compl. ¶ 112.)   Without further explanation, this allegation is conclusory and not plausible. Plaintiffs neither plead nor explain how "rust" or "corrosion" to the vehicle's exterior relates to the central function.   For example, Plaintiffs do not allege how these defects actually affect the performance of the vehicle, whether its efficiency, reliability, or otherwise.   As alleged, the Paint Defect is an aesthetic one affecting the look of the vehicle's exterior, not one related to the vehicle's central function.   *Cf. Ramos v. Ford Motor Co.*, No. 2:24-cv-04066-AH (JPRx), 2025 WL 1606917, at *4 (C.D. Cal. Apr. 16, 2025) (finding transmission defect "is a critical component and necessary for the central function of the Subject Vehicle, as it controls acceleration and deceleration").   Plaintiffs have not plausibly alleged that the Paint Defect relates to the central function of the vehicles.

Accordingly, Plaintiffs' UCL, FAL, and CLRA claims are **DISMISSED with leave to amend**.

### b. Pennsylvania

Clemmens alleges that Honda violated the UTPCPL when it "intentionally concealed" material facts by failing to disclose the Paint Defect. (*Id.* ¶¶ 236–47.) "When allegations underlying a UTPCPL claim involve a defendant's nondisclosure rather than misrepresentation, the omission is actionable only if there is a duty to disclose." *DeSimone v. U.S. Claims Servs., Inc.*, Civ. A. No. 19-6150, 2020 WL 1164794, at *3 (E.D. Pa. Mar. 11, 2020). "In Pennsylvania, a duty to speak requires the presence of a fiduciary or other confidential relationship as prerequisite to liability for omissions." *Id*. (internal quotation marks omitted).

Absent a fiduciary or confidential relationship, Pennsylvania recognizes "a duty to disclose a known latent defect to a purchaser when the purchaser is unsophisticated and does not have access to the same information as the manufacturer." *Zwiercan v. Gen. Motors Corp. (Zwiercan I)*, 58 Pa. D. & C.4th 251, 259 (Pa. Com. Pl. 2002). Contrary to Plaintiffs' contention, (Opp'n 15), Pennsylvania law limits this duty to "known serious and life threatening latent defects," *Zwiercan v. Gen. Motors Corp. (Zwiercan II)*, No. 3235, 2003 WL 1848571, at *2 (Pa. Com. Pl. Mar. 18, 2003); *see, e.g.*, *Tijerina v. Volkswagen Grp. of Am., Inc.*, No. 2:21-cv-18755 (BRM) (LDW), 2023 WL 6890996, at *31 (D.N.J. Oct. 19, 2023) (allowing UTPCPL claim to proceed where plaintiffs "allege[d] the improperly latched second-row seat could result in death or severe injury to drivers and passengers"); *Siqueiros v. Gen. Motors LLC*, No. 16-CV-07244-EMC, 2021 WL 2115400, at *8 (N.D. Cal. May 25, 2021) (recognizing limitation and finding no duty to disclose "oil-consumption defect" under UTPCPL).

Plaintiffs do not allege that Honda and Clemmens were in a fiduciary or confidential relationship. (*See* Compl.; *cf.* Opp'n 12 & n.6 (arguing that three of the *LiMandri* factors are present, but not the one requiring a fiduciary relationship).) Nor have they alleged "known serious and life threatening latent defects." *Zwiercan II*,

2003 WL 1848571, at *2.    Accordingly, the Court **DISMISSES** Clemmens's UTPCPL claim **with leave to amend**.

**V.      CONCLUSION**

For the reasons discussed above, the Court **GRANTS** Honda's Motion to Dismiss **with leave to amend**.  (ECF No. 24.)  Plaintiffs may amend to cure the identified deficiencies, as well as any of the alleged deficiencies Honda raised in its Motion to Dismiss that the Court did not address.  If Plaintiffs choose to file an amended complaint, they shall do so within **twenty-one (21) days** of the date of this Order, in which case Honda shall answer or otherwise respond within **fourteen (14) days** of the filing.  If Plaintiffs chooses not to amend, then as of the lapse of the deadline to amend, all the claims dismissed above, excepting Hernandez's claim for breach of express warranty, shall be deemed dismissed with prejudice.


**IT IS SO ORDERED.**


July 17, 2025

 

 

_____
               **OTIS D. WRIGHT, II**
      **UNITED STATES DISTRICT JUDGE**