O

# United States District Court
# Central District of California

JIM CLEMMENS et al.,

               Plaintiffs,

    v.

AMERICAN HONDA MOTOR
COMPANY, INC.

               Defendant.

Case № 2:24-cv-09728-ODW (SKx)

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [47]**

## I.    INTRODUCTION

Several representative Plaintiffs bring this putative class action against American Honda Motor Company, Inc. ("Honda") in connection with various Honda-manufactured vehicles they leased or purchased that suffer from a paint defect. (First Am. Compl. ("FAC"), Dkt. No. 39.)  Honda now moves to dismiss Plaintiffs' First Amended Complaint.  (Mot. Dismiss ("Motion" or "Mot."), Dkt. No. 47.)  For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** Honda's Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.    BACKGROUND[2]

The parties are familiar with the factual and procedural background leading up to the filing of the instant Motion and the Court does not needlessly repeat it here. Rather, the Court incorporates by reference the detailed factual and procedural background in its prior Order Granting Honda's Motion to Dismiss.  (Order Mot. Dismiss ("MTD Order"), Dkt. No. 38.)   The Court summarizes only the history relevant to the disposition of the present Motion.

Honda markets the Class Vehicles[3] to consumers.  (FAC ¶ 32.)  For example, Honda promotes its vehicles for their quality, durability, and "ability to retain residual value."  (*Id.* ¶ 33.)   Honda represents that its vehicles "definitely punch above their weight when it comes to value with class-leaning quality, safety ratings, standard features and a company commitment to avoid value-shaping fleet sales."  (*Id.*)

The Class Vehicles, however, suffer from a defect, causing the paint to "fail, peel, delaminate . . . , bubble, and flake" (the "Paint Defect" or "defect").  (*Id.* ¶ 51.) Honda knew about the Paint Defect as early as 2012 but did not disclose the defect to consumers.  (*Id.* ¶¶ 80–81.)  In warranty extension notices, issued only to a limited subset of its customers, Honda suggested that the Paint Defect related to the factory's paint application process.  (*Id.* ¶ 52.)  In 2019, Honda issued several Technical Service Bulletins ("TSBs") addressing recurring paint issues.  (*Id.* ¶¶ 74–78.)  In a 2019 TSB, Honda extended warranty coverage for White Diamond Pearl paint in 2014–2016 Acura MDX vehicles.  (*Id.* ¶ 75.)  In the TSB, Honda instructed consumers to inspect their vehicles and, if necessary, have a certified body shop repaint the entire affected area after obtaining Honda's approval.  (*Id.*)

---

[2] All factual references derive from the First Amended Complaint or attached exhibits, unless otherwise noted, and well-pleaded factual allegations are accepted as true for purposes of this Motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] Plaintiffs define "Class Vehicles" as vehicles leased or purchased from 2013 to the present, including: Acura MDX, Honda Odyssey, Honda Pilot, Honda Fit, and Honda HR-V, with the following paint colors: (1) White Diamond Pearl (NH-603P); (2) Taffeta White (NH-578); (3) Taffeta White (NH-578); (4) White Orchid Pearl/Bellanova White (NH-788P); and (5) Platinum White Pearl (NH-883P).  (FAC ¶ 1.)

Plaintiffs purchased or leased vehicles from various Honda-authorized dealers. Specifically, in 2013, Marie Toussaint purchased a new 2014 Acura MDX from a New Jersey dealer.  (*Id.* ¶ 216.)  In 2017, Terri Hernandez leased a new 2017 Acura MDX from a California dealer.  (*Id.* ¶ 179.)  In 2019, Jim Clemmens purchased a certified pre-owned 2016 Acura MDX from a Pennsylvania dealer.  (*Id.* ¶¶ 150, 165.)

In Summer 2018, Toussaint noticed the Paint Defect near the sunroof of her vehicle.  (*Id.* ¶¶ 2, 220.)  An Acura dealer repaired the defect under warranty, but failed to disclose its actual nature and extent, or that it would recur.  (*Id.* ¶¶ 221–22.)  After the repair, Toussaint carefully inspected the vehicle and found no other paint damage.  (*Id.* ¶¶ 223–24.)  In Summer 2024, Toussaint noticed the same Paint Defect, now near the rear tailgate area.  (*Id.* ¶ 227.)  This time, the Acura dealer and Acura customer relations declined to repair the vehicle under warranty.  (*Id.* ¶¶ 230–31.)

In 2024, Clemmens and Hernandez also discovered the Paint Defect on their vehicles.  (*Id.* ¶¶ 159, 183.)  They reported the defect to Acura dealers, who declined to repair their vehicles under warranty.  (*Id.* ¶¶ 162–64, 185–87.)  Acura customer relations representatives acknowledged that the Paint Defect was "frequently seen" and "a widespread issue."  (*Id.* ¶¶ 163, 185.)  However, they refused to reimburse Clemmens and Hernandez for their out-of-pocket repair costs, asserting the repairs were not covered under Honda's extended warranty.  (*Id.* ¶¶ 164, 185.)

On November 12, 2024, Plaintiffs initiated this putative class action against Honda, asserting six causes of action under various consumer protection statutes. (Compl., Dkt. No. 1.)  On July 17, 2025, the Court granted Honda's motion to dismiss Plaintiffs' Complaint with leave to amend to cure the identified deficiencies.  (MTD Order 21.)  On August 7, 2025, Plaintiffs filed their First Amended Complaint, in which Plaintiffs add seven new plaintiffs and assert six new causes of action. (*Compare* Compl. ¶¶ 198–300, *with* FAC ¶¶ 288–456.)

Plaintiffs assert the following class claims against Honda for violations of (1) California's Unfair Competition Law ("UCL"); (2) California's False Advertising

3

Law ("FAL"); (3) California's Consumers Legal Remedies Act ("CLRA"); (4) Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"); (5) New Jersey's Consumer Fraud Act ("NJCFA"); (6) Georgia's Fair Business and Practices Act; (7) Georgia's Deceptive Trade Practices Act; (8) Virginia's Consumer Protection Act; (9) Minnesota's Prevention of Consumer Fraud Act; (10) Minnesota's Uniform Deceptive Trade Practices Act; (11) North Carolina's Unfair and Deceptive Trade Practices Act; (12) breach of express warranty; (13) fraudulent concealment; and (14) unjust enrichment. (FAC ¶¶ 288–456.)

Honda moves to dismiss Plaintiffs' First Amended Complaint in its entirety under Federal Rule of Civil Procedure ("Rule") 12(b)(6). (Mot.)

### III.      LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the "minimal notice pleading requirements" of Rule 8(a)(2). *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Iqbal*, 556 U.S. at 678 (holding that a claim must be "plausible on its face" to avoid dismissal).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable

4

inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Ultimately, there must be sufficient factual allegations "to give fair notice and to enable the opposing party to defend itself effectively," and the "allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

When a plaintiff's claims are fraud-based, Rule 9(b)'s heightened pleading requirements apply. *Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989). Rule 9(b) provides, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "A pleading satisfies Rule 9(b) if it identifies 'the who, what, when, where, and how' of the misconduct charged." *MetroPCS v. SD Phone Trader*, 187 F. Supp. 3d 1147, 1150 (S.D. Cal. 2016) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). The plaintiff must "set forth more than the neutral facts necessary to identify the transaction [and] must set forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1106 (emphasis omitted).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear that any amendment could not save the complaint. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV.    DISCUSSION

Honda first asks the Court to strike or dismiss the newly added plaintiffs and claims on the ground that these additions exceed the scope of the Court's order granting leave to amend. (Mot. 3–4.) Honda next argues that the repleaded claims again fail. (*Id.* at 4–15.)

As an initial manner, Honda argues that the newly added plaintiffs and claims exceed the scope of the Court's order granting leave to amend. (*Id.* at 3–4.) Plaintiffs respond that they understood the Court's dismissal order to "impliedly" permit the addition of new plaintiffs and claims. (Opp'n 4, Dkt. No. 48.) They contend that doing so "made more sense than filing a new case given the related nature of the claims and the near certainty that a new case would be assigned to this Court." (*Id.*)

When a court grants leave to amend for a specific purpose, courts routinely confine amendment to that purpose and decline to entertain new claims, new parties, or materially different theories introduced without authorization. *See, e.g.*, *Peguero v. Toyota Motor Sales, USA, Inc.*, No. 2:20-cv-05889-VAP (ADSx), 2021 WL 2910562, at *5 (C.D. Cal. Apr. 26, 2021) (collecting cases where courts struck the addition of new plaintiffs and claims as exceeding the scope for which leave to amend was granted and declining to address the merits of the stricken claims).

The Court's prior dismissal order granted leave to amend "to cure the identified deficiencies." (MTD Order 21.) It did not authorize Plaintiffs to dramatically expand the case by adding new parties or new claims. Accordingly, the Court **STRIKES** all new claims (Counts 6–11) and all new plaintiffs in the First Amended Complaint. The Court "need not and will not address" the merits of the stricken claims. *Peguero*, 2021 WL 2910562, at *5.

The Court next addresses Honda's arguments that Plaintiffs' repleaded claims still fail. (Mot. 4–15.) The Court first addresses Honda's argument that the repleaded claims are time-barred, (*id.* at 14–15), before discussing the merits of each claim.

**A.     Statute of Limitations**

Honda moves to dismiss Plaintiffs' repleaded causes of action for failing to bring them within the applicable statutes of limitations. (*Id.*) Plaintiffs counter that the delayed discovery rule postponed accrual of their claims. (Opp'n 19–21.) The Court already found that Clemmens and Hernandez plausibly allege that the delayed discovery rule applies to their claims. (MTD Order 7.) Thus, the Court declines

Honda's invitation to revisit its prior ruling.  (Mot. 14–15.)  Regarding Toussaint's claims, Plaintiffs argue that the discovery rule applies to her claims.  (Opp'n 19–21.) They also argue that the "fraudulent concealment and equitable estoppel doctrines toll[ed] her claims" until she discovered the recurring defect in 2024.  (*Id.* at 21–22.)

"[T]he discovery rule postpones accrual of a claim until 'the plaintiff discovers, or has reason to discover, the cause of action.'"  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1024 (9th Cir. 2008) (quoting *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999)) (California law); *accord Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (New Jersey law); *Adams v. Zimmer US, Inc.*, 943 F.3d 159, 163 (3d Cir. 2019) (Pennsylvania law).  To benefit from the discovery rule, the plaintiff "must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005).  "[W]hen a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled."  *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993)

Toussaint purchased her vehicle in late 2013 and first noticed the Paint Defect on her vehicle in Summer 2018.  (FAC ¶¶ 216, 220.)  Absent tolling or delayed accrual, her claims fall outside the applicable limitations periods.  *See Kaplan v. Gen. Elec. Co.*, No. 2:22-CV-05296 (BRM) (ESK), 2023 WL 4288157, at *4 (D.N.J. June 30, 2023) (noting that NJCFA, fraudulent concealment, and unjust enrichment claims have a six-year limitations period, and that New Jersey breach of warranty claims have a four-year limitations period).

Toussaint plausibly alleges that the discovery rule applies to her claims. Although Toussaint first noticed the Paint Defect in Summer 2018 by the sunroof area of her vehicle, she had the defect repaired under warranty and reasonably believed that there would be no further paint issues.  (*Id.* ¶¶ 220–23.)  After the repairs, she

diligently inspected her vehicle and noticed no other problems with the vehicle's paint. (*Id.* ¶ 224.) However, six years later, she noticed the same Paint Defect, this time by the rear/tailgate area. (*Id.* ¶ 227.) She returned to the same Acura dealer, who informed her that the repairs would not be covered under Honda's extended warranty. (*Id.* ¶ 231.) Toussaint could only reasonably discover the existence of a systemic Paint Defect in Summer 2024, after the repeated peeling and delaminating indicated that her vehicle suffered from an underlying persisting defect. (*Id.* ¶ 228.)

Accepting the factual allegations as true, Toussaint plausibly alleges that she neither discovered nor could have reasonably discovered the existence of a recurring Paint Defect until Summer 2024, when the defect reappeared in a different area and manifested in a manner suggesting a broader underlying issue rather than an isolated, repairable condition. (*Id.*) Toussaint's allegations adequately describe both the time and manner of discovery and her diligence in discovering the defect. Accordingly, the Court declines to dismiss her claims as time-barred.

As the Court finds that Toussaint plausibly invokes the delayed discovery rule, the Court also finds that her claims are timely brought. Accordingly, the Court need not reach her alternative tolling arguments. *See Perez v. Reubart*, 150 F.4th 1164, 1182 n.10 (9th Cir. 2025) (declining to reach the plaintiff's additional tolling arguments after finding that she was entitled to equitable tolling).

In sum, Clemmens, Hernandez, and Toussaint sufficiently allege that the statute of limitations does not bar their claims based on the discovery rule. Accordingly, the Court **DENIES** Honda's Motion on this basis.

## B.     Fraud-Based Claims (Counts 1–5)

Honda also moves to dismiss Plaintiffs' claims under the UCL, FAL, CLRA, UTPCPL, and NJCFA, all of which sound in fraud. (Mot. 4–8.) The Court previously dismissed the fraud-based claims because Plaintiffs did not sufficiently allege a misrepresentation or omission under Rule 9(b)'s heightened pleading standard. (MTD

Order 14–19.)[4]  In their Opposition here, Plaintiffs abandon these claims to the extent they are based on misrepresentations.  (*See* Opp'n 5 n.4 ("Plaintiffs are asserting omission-based fraud claims against [Honda], not misrepresentation claims.").)  Thus, the Court analyzes only whether Plaintiffs sufficiently plead an actionable omission.

Plaintiffs contend that they satisfy Rule 9(b)'s heightened pleading requirement by identifying the material information Honda omitted about the Paint Defect.  (*Id.* at 6–8.)  Specifically, Plaintiffs argue that they have alleged that Honda failed to disclose the Paint Defect in marketing materials and at authorized dealerships during the sale of the Class Vehicles, while promoting the vehicles' durability, aesthetics, and value with the intent to induce purchases and earn substantial profits.  (*Id.*)

1.     *UCL, FAL, CLRA (Counts 1–3)*

To plead omission-based claims under California's UCL, FAL, and CLRA, a plaintiff must allege that the defendant had a duty to disclose the allegedly omitted information or that the omission was contrary to a representation actually made. *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018).  To plausibly allege a duty to disclose, Plaintiffs must allege (1) whether the omission was material; (2) whether the defect was central to the product's function; and (3) the four *LiMandri* factors. (MTD Order 18 (citing *Hodsdon*, 891 F.3d at 863).)  The *LiMandri* factors are: (1) the defendant was in a fiduciary relationship with the plaintiff; (2) the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively concealed a material fact from the plaintiff; or (4) the defendant made partial representations but also suppressed some material facts.  *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997).  Honda argues that Plaintiffs' fail to allege materiality, central functionality, and any of the four *LiMandri* factors.  (Mot. 5–7.)

---

[4] The Court already found that "Plaintiffs have sufficiently alleged Honda had pre-sale knowledge of the Paint Defect as to each Plaintiff" based on Honda's prior TSBs.  (MTD Order 12–14.)  Thus, the Court declines Honda's invitation to revisit its prior ruling on this issue.  (*See* Mot. 5.)

### a. Materiality

Honda argues that Plaintiffs' materiality allegations remain largely unchanged and therefore "still insufficient." (*Id.* at 6.) An omitted fact is material if a reasonable consumer would deem it important in deciding how to act in the transaction at issue. *Apodaca v. Whirlpool Corp.*, No. 8:13-cv-00725 JVS (ANx), 2013 WL 6477821, at *6 (C.D. Cal. Nov. 8, 2013). Thus, Plaintiffs must plausibly allege that, had the omitted fact been disclosed, they "would have been aware of it and behaved differently." *See Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007). Materiality is evaluated from the perspective of a reasonable consumer. *Id.*

Applying that standard here, Plaintiffs identify the omission as Honda's failure to disclose that the Class Vehicles suffered from a latent Paint Defect. (FAC ¶ 295.) Honda advertised its vehicles nationwide based on their high-value, durability, and quality. (*Id.* ¶¶ 30–39.) Thus, reasonable consumers contemplating the purchase of a Honda-manufactured vehicle would have developed a reasonable expectation regarding the "quality and longevity" of the vehicle's paint. (*Id.* ¶ 64.) Plaintiffs "specifically wanted to purchase a vehicle in a white color, and the availability and popularity" of white paint was material to their decision to purchase their vehicles. (*Id.* ¶¶ 156, 181, 218.) Thus, had Honda disclosed the Paint Defect at the point of sale, that fact would have altered Plaintiffs' purchasing decision as they would not have purchased the Class Vehicles or would have paid substantially less. (*Id.* ¶ 14.) Accepting these allegations as true, the Court finds that Plaintiffs plausibly allege that the existence of the Paint Defect that could cause a vehicle's paint to fail would have been material to a reasonable consumer. *See Falk*, 496 F. Supp. 2d at 1096 (finding that the omission of the fact that a vehicle's speedometer "is prone to fail" "would be material to [a] reasonable consumer").

### b. Central Functionality

Honda next argues that the Paint Defect does not relate to the Class Vehicles' central function. (Mot. 5–6.) The "central function" inquiry focuses on the product's

objective performance, not a consumer's subjective preferences. *Hodsdon*, 891 F.3d at 864. The "central function" test does not require a plaintiff to plead that the defect "renders a product incapable of use." *Bettles v. Toyota Motor Corp.*, No. 2:21-cv-07560-ODW (AFMx), 2022 WL 1619337, at *4 (C.D. Cal. May 23, 2022) (citation modified). "Rather, a plaintiff must only plausibly allege that the defect "relate[s] to the central function of the [vehicle]." *Id.* at *3.

Applying that standard here, Plaintiffs plausibly allege that the Paint Defect affects more than the Class Vehicles' appearance. Specifically, they allege that a vehicle's exterior paint seals metal components from moisture, salt, and other environmental exposure that can lead to rust and corrosion. (FAC ¶ 118.) Premature rust and corrosion can "weaken the frame, window, and windshield connections, the undercarriage, or the suspension mounting points, increasing the risk of structural failure, especially in a crash or under a load." (*Id.* ¶ 119.)

Honda admits that "Plaintiffs' new allegations might not be *conclusory*," but argues that "they are certainly *implausible*." (Mot. 5.) To support its argument, Honda relies on the Ninth Circuit's unpublished memorandum in *In re Intel Corp. CPU Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 22-35652, 2023 WL 7211394 (9th Cir. Nov. 2, 2023). Honda's reliance on *In re Intel* is misplaced. There, the court affirmed the district court's holding that the plaintiffs failed to plausibly allege that cybersecurity vulnerabilities were central to Intel's microprocessors' function because the microprocessors continued to perform "all necessary computations" despite the alleged vulnerabilities. *Id.* at *1–2.

Plaintiffs' allegations here are materially different. Plaintiffs do not allege a latent vulnerability that leaves the Class Vehicles' physical performance and integrity intact. Rather, they allege that the Paint Defect compromises the protective barrier integral to preserving the Class Vehicles' structural integrity. When that barrier fails, exposed metal components are subject to accelerated deterioration, increasing the risk of failure during a crash or under load. (FAC ¶¶ 118–21.) Thus, unlike in *In re Intel*,

the Paint Defect initiates a process of physical degradation affecting the Class Vehicles' structural integrity that ultimately creates a safety hazard. This is qualitatively different from a theoretical cybersecurity vulnerability that leaves the product's mechanical performance unchanged. *See In re Intel*, 2023 WL 7211394, at \*1. Thus, the Court finds that Plaintiffs plausibly allege that the Paint Defect relates to the central function of the Class Vehicles.

### c. *LiMandri* Factors

Honda next argues that Plaintiffs still fail to plead facts establishing any of the circumstances giving rise to a duty to disclose under *LiMandri*. Specifically, Honda contends that Plaintiffs fail to plausibly allege a fiduciary relationship, exclusive knowledge, active concealment, or misleading partial disclosures. (Mot. 6.)

Plaintiffs do not allege a fiduciary duty. *See Velasco v. Chrysler Grp. LLC*, No. 2:13-cv08080-DDP (VBKx), 2014 WL 4187796, at \*6 (C.D. Cal. Aug. 22, 2014) ("[F]iduciary or other relationships involving the reposing of special trust rarely exist in typical commercial transactions."). Absent a fiduciary duty, "[a] duty to disclose facts arises only when the parties are in a relationship that gives rise to the duty, such as 'seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual arrangement.'" *Haas v. Gen. Motors LLC*, No. 2:23-cv-10522-MWF (SKx), 2024 WL 2106953, at \*5 (C.D. Cal. Apr. 4, 2024) (quoting *Bigler-Engler v. Breg, Inc.*, 7 Cal. App. 5th 276, 311 (2017)).

The Court finds that Plaintiffs' plausibly allege a transactional buyer-seller relationship between them and Honda through Honda's authorized dealer network. *See id.* Plaintiffs' allegations plausibly describe a manufacturer-dealer system in which Honda exercises significant oversight over its authorized dealers. For instance, Honda requires dealers to follow its rules and policies governing warranty delivery, Paint Defect repairs, Paint Defect TSBs, responses to consumer complaints, and interactions with consumers. (*Id.* ¶ 123.) Honda also controls key aspects of dealers' day-to-day operations, including sales practices, advertisement programs, and the

training of sales representatives.  (*Id.* ¶¶ 123–24.)  Additionally, Honda requires dealers to submit to Honda for performance review and controls dealers' ability to maintain minimum net working capital, equity, flooring, or lines of credit.  (*Id.*)  Honda also requires dealers to furnish monthly statements to Honda and reserves the right to examine, audit, and reproduce dealer records relating to the sale, servicing, and inventory of Honda vehicles.  (*Id.*)  In light of these allegations, the Court finds that Plaintiffs plausibly plead a sufficiently close relationship between them and Honda, though Honda's dealers, to support a duty to disclose at the pleading stage.

Plaintiffs also plausibly allege that Honda and its authorized dealers had exclusive knowledge of the Paint Defect based on prior TSBs, premarket testing, and consumer complaints.  (*Id.* ¶¶ 5–6, 80–110.)  Thus, the Court finds that Plaintiffs plausibly allege that Honda had a duty to disclose the Paint Defect under *LiMandri*.

Accordingly, the Court concludes that Plaintiffs' UCL, FAL, and CLRA claims are adequately pleaded and **DENIES** Honda's Motion on this basis.

2.      *UTPCPL (Count 4)*

Clemmens alleges that Honda violated the UTPCPL when it "intentionally concealed" material facts by failing to disclose the Paint Defect.  (*Id.* ¶¶ 325–36.)  "When allegations underlying a UTPCPL claim involve a defendant's nondisclosure rather than misrepresentation, the omission is actionable only if there is a duty to disclose." *DeSimone v. U.S. Claims Servs., Inc.*, No. 19-6150, 2020 WL 1164794, at *3 (E.D. Pa. Mar. 11, 2020).  Pennsylvania law limits this duty to "known serious and life threatening latent defects." *Zwiercan v. Gen. Motors Corp.*, No. 3235, 2003 WL 1848571, at *2 (Pa. Ct. Com. Pl. Mar. 18, 2003).)

Plaintiffs acknowledge that "the Paint Defect is not 'life-threatening.'" (Opp'n 11.)  However, they argue that "Pennsylvania law also recognizes that active concealment establishes a duty to disclose including when a "defendant's incomplete disclosure can result in misleading 'half-truths.'" (*Id.* (quoting *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 442 (S.D.N.Y. 2017).)  That duty to

disclose arises in the context of common law fraud, not UTPCPL. *See In re Gen. Motors*, 257 F. Supp. 3d at 442 (discussing the "difference between active concealment and mere silence in the context of common law fraud"). The alleged Paint Defect does not fall within the category of defects that trigger a duty to disclose under Pennsylvania law. Thus, Plaintiffs cannot plausibly allege the duty element required to sustain their omission-based claim under the UTPCPL. As this defect is legal rather than factual, the Court finds that further amendment would be futile. *Schreiber*, 806 F.2d at 1401. Accordingly, the Court **GRANTS** Honda's Motion and **DISMISSES** Clemmens's UTPCPL **WITHOUT LEAVE TO AMEND**.

3.     *NJCFA (Count 5)*

Toussaint alleges that Honda violated the NJCFA when it "intentionally concealed" material facts by failing to disclose the Paint Defect. (*Id.* ¶¶ 337–46.)

To plead an omission under the NJCFA, the plaintiff must show that the defendant "(1) knowingly concealed (2) a material fact (3) with the intention that plaintiff rely upon the concealment." *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 297 (D.N.J. 2009). "[W]hen the alleged consumer fraud consists of an omission, the plaintiff must show that the defendant acted with knowledge, and intent *is* an essential element of the fraud." *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 18 (1994).

Plaintiffs fail to plausibly allege intent. They allege, in largely formulaic terms, that Honda "intentionally conceal[ed]" material facts about the Class Vehicles. (FAC ¶¶ 340–44.) But these allegations merely repeat the elements of an NJCFA omission claim rather than supply supporting facts that Honda acted with the necessary intent. *See Cox*, 138 N.J. 2 at 18. Plaintiffs do not identify what specific conduct Honda undertook to conceal the Paint Defect from Toussaint before she purchased the Class Vehicle, with the intent that she rely on the concealment in making her purchase. Thus, the Court **GRANTS** the Motion and **DISMISSES** Toussaint's NJCFA claim. As this pleading defect goes to factual insufficiency rather than legal impossibility, dismissal is **WITH LEAVE TO AMEND**. *Schreiber*, 806 F.2d at 1401.

14

## C.    Common Law Claims (Counts 12–14)

Honda raises several challenges to Plaintiffs' claims for breach of express warranty, fraudulent concealment, and unjust enrichment.  (Mot. 8–14.)

### 1.    *Breach of Express Warranty (Count 12)*[5]

Clemmens and Toussaint assert breach of express warranty claims under Pennsylvania and New Jersey law because they purchased their Class Vehicles in those states, respectively.  (FAC ¶¶ 413, 415.)  Honda argues that Plaintiffs' New Jersey and Pennsylvania breach of express warranty claims fail because (a) Plaintiffs failed to provide Honda with "pre-suit notice" within reasonable time of discovery, and (b) Plaintiffs "plead no breach" of Honda's repair-or-replace warranties or the voluntary TSB warranty extensions.  (Mot. 9–13.)[6]

#### a.  Pre-Suit Notice

Plaintiffs argue that Clemmens and Toussaint "did not need to provide [Honda] with pre-suit notice" under Pennsylvania and New Jersey law because Honda "is a remote manufacturer."  (Opp'n 17.)  They also argue that Honda's "knowledge of the Paint Defect" relieved them "from any obligation to provide pre-suit notice."  (*Id.*)  Finally, Plaintiffs contend that, to the extent pre-suit notice was required, they provided it when they notified Honda of the Paint Defect and demanded repairs.  (*Id.*)

Both Pennsylvania and New Jersey law requires a buyer to "notify" a seller within a "reasonable" time after the buyer discovers the breach.  N.J. Stat. Ann. § 12A:2-607(3)(a) ("[T]he buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."); 13 Pa. Cons. Stat. Ann. § 2607(c)(1) (same)).  The purpose of the notice

---

[5] The Court previously dismissed without prejudice Hernandez's claim under California law for breach of express warranty pursuant to her voluntary dismissal of this claim. (MTD Order 11 n.7); *see* Fed. R. Civ. P. 41(a)(1)(A)(i).  Plaintiffs bring the repleaded California breach of express warranty claim only through a newly-added plaintiff, Elizabeth Torres. (FAC ¶ 414.)  In light of the Court's above disposition striking all new claims and parties added in the First Amended Complaint, the Court does not reach the merits of Torres's stricken claim.

[6] Honda makes the same arguments as to the breach of express warranty claims brought under both Pennsylvania and New Jersey law.  (Mot. 9–13.)

15

requirement for breach of express warranty claims is to allow the seller an opportunity to resolve the dispute before the buyer initiates a lawsuit. *See Schmidt v. Ford Motor Co.*, 972 F. Supp. 2d 712, 718 (E.D. Pa. 2013) ("[A] plaintiff, specifically a buyer, must provide notification of the alleged product defect to the manufacturer prior to bringing suit on a breach-of-warranty theory."). Under Pennsylvania law, the filing of a complaint may constitute sufficient notice. *Precision Towers, Inc. v. Nat-Com, Inc.*, No. 2143, 2002 WL 31247992, at *5 (Pa. Com. Pl. Sept. 23, 2002). Under New Jersey law, pre-suit notice is not required "in a case against a remote manufacturer who was not the immediate seller of a defective product." *Strzakowlski v. Gen. Motors Corp.*, No. Civ.A. 04-4740, 2005 WL 2001912, at *3 (D.N.J. Aug. 16, 2005).

The Court finds that, to the extent that Clemmens was required to give pre-suit notice under Pennsylvania law, the filing of this action constitutes sufficient notice. *Precision Towers*, 2002 WL 31247992, at *5. As for Toussaint, she purchased her vehicle from an authorized dealer, not from Honda directly. (FAC ¶ 216.) Therefore, Honda is a "remote manufacturer who was not the immediate seller of a defective product" and Toussaint need not provide Honda with pre-suit notice. *See Strzakowlski*, 2005 WL 2001912, at *3. Therefore, Plaintiffs properly plead notice.

### b. No breach

Honda argues that the Pennsylvania and New Jersey breach of express warranty claims fail because Clemmens's and Toussaint's Paint Defect arose after the four-year repair-or-replace warranty expired. (Mot. 9–10.)

Generally, an express warranty does not cover repairs made after the applicable warranty time has elapsed. *See, e.g.*, *Osness v. Lasko Prods., Inc.*, 868 F. Supp. 2d 402, 410–12 (E.D. Pa. 2012) (applying this rule under Pennsylvania law); *Snowdy v. Mercedes-Benz USA, LLC*, No. CV 23-1681 (ES) (AME), 2024 WL 1366446, at *23 (D.N.J. Apr. 1, 2024) (collecting cases applying this rule under New Jersey law). Under Pennsylvania and New Jersey law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of

16

the bargain creates an express warranty that the goods shall conform to the affirmation or promise." 13 Pa. Cons. Stat. Ann. § 2313; N.J. Stat. Ann. § 12A:2-313.

Plaintiffs do not dispute that they experienced the Paint Defect in their vehicles and sought repairs after the warranty period expired. (*See generally* Opp'n.) As an express warranty does not cover repairs made after the applicable time has elapsed, Plaintiffs cannot sustain their breach of express warranty claim. *Skeen v. BMW of N. Am., LLC*, No. 2:13-CV-1531-WHW-CLW, 2014 WL 283628, at *12 (D.N.J. Jan. 24, 2014); *Osness*, 868 F. Supp. 2d at 412. Instead, they contend that Honda breached the 2019 TSBs, which provide a warranty extension for repairs of the Paint Defect for up to eight years "from the original date of purchase." (Opp'n 15.)

As an initial matter, Plaintiffs fail to plausibly allege that Honda's TSB warranty extensions were "part of the basis of the bargain." *See* 13 Pa. Cons. Stat. Ann. § 2313; N.J. Stat. Ann. § 12A:2-313. Plaintiffs allege that Honda failed to notify them of the TSBs. (FAC ¶ 52 (alleging that "Honda issued warranty extension notices to a very limited subset of Class members (but not Plaintiffs)").) Moreover, based on Plaintiffs' allegations, Honda issued the TSB warranty extensions in 2019, years after Plaintiffs purchased their vehicles. (*Id.* ¶¶ 74–78, 150, 165, 216.) Thus, Plaintiffs fail to allege that Honda's 2019 TSBs were part of the basis of the parties' bargain.

Even assuming the 2019 TSB warranty extensions could support a claim for breach of express warranty, Toussaint purchased her vehicle in late 2013. (*Id.* ¶ 216.) Thus, the alleged TSB warranty extension, if any, expired in 2021—eight years after her original purchase date. (*Id.* ¶ 244.) That Toussaint could not reasonably have discovered the Paint Defect until 2024 is immaterial. Even if Toussaint discovered the Paint Defect in Summer 2024, any extended warranty had already expired by then. Thus, Toussiant cannot plausibly allege a breach of an express warranty.

As for Clemmens, he purchased his vehicle in Summer 2019. (*Id.* ¶¶ 150, 165.) Assuming the 2019 TSBs are actionable, it is possible that the eight-year extended warranty was still in effect when Clemmens sought repairs. (*Id.* ¶¶ 162, 165.)

Thus, the Court **GRANTS** Honda's Motion and **DISMISSES** Plaintiffs' claim for breach of express warranty. As amendment may cure some of these deficiencies as to Clemmens, the Court finds that amendment is not futile. *Schreiber*, 806 F.2d at 1401. Thus, dismissal is **WITH LEAVE TO AMEND**, as to Clemmens only.

2.      *Fraudulent Concealment (Count 13)*

Honda argues that Plaintiffs' fraudulent concealment claim fails for the same reasons as Plaintiffs fraud-based statutory claims. (Mot. 15–20.)

A common-law fraudulent concealment claim requires the plaintiff to show: "(1) concealment of a material fact, (2) a duty to disclose, (3) intent to defraud, (4) reliance, and (5) damages." *Haas*, 2024 WL 2106953, at *4. While Rule 9 "excuses a party from pleading discriminatory intent under an elevated pleading standard," "[i]t does not give [the party] license to evade the less rigid—though still operative—strictures of Rule 8." *Iqbal*, 556 U.S. at 686–87. Thus, "claims of fraud . . . must, in addition to pleading with particularity, also plead plausible allegations." *Cafasso, U.S. ex. rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). "That is, the pleading must state 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the misconduct alleged.'" *Id.* (citation modified) (quoting *Twombly*, 550 U.S. at 556).

Here, Plaintiffs' fraudulent concealment claim is premised on Honda's alleged failure to disclose the Paint Defect. As the Court already noted above, Plaintiffs' allegations of active concealment are largely formulaic and assert, in general terms, that Honda intended to conceal the Paint Defect from its customers. Thus, Plaintiffs fail to plausibly plead Honda's intent to defraud.

Accordingly, the Court **GRANTS** Honda's Motion and **DISMISSES** Plaintiffs' common law fraudulent concealment claim. As this pleading deficiency goes to factual insufficiency rather than legal impossibility, dismissal of this claim is **WITH LEAVE TO AMEND**. *Schreiber*, 806 F.2d at 1401.

18

### 3. *Unjust Enrichment (Count 14)*

Unjust enrichment is not a standalone cause of action under California law. *Baiul-Farina v. Lemire*, 804 F. App'x 533, 537 (9th Cir. 2020). However, courts can still "construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Generally, "[a]n action based on quasi-contract cannot lie where a valid express contract covering the same subject matter exists between the parties." *Gerlinger v. Amazon.com. Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004). California courts permit plaintiffs to plead unjust enrichment in the alternative at the pleading stage, particularly where the validity, enforceability, or scope of the alleged contract remains in dispute. *Clear Channel Outdoor, Inc. v. Bently Holdings Cal. LP*, No. C-11-2576 EMC, 2011 WL 6099394, at *9 (N.D. Cal. Dec. 7, 2011) ("[E]ven though a plaintiff may not ultimately prevail under both unjust enrichment and breach of contract, it may plead both in the alternative."). "However, a plaintiff may not plead the existence of an enforceable contract and simultaneously maintain a quasi-contract claim unless the plaintiff also pleads facts suggesting that the contract may be unenforceable or invalid." *Saroya v. Univ. of the Pac.*, 503 F. Supp. 3d 986, 998 (N.D. Cal. 2020).

Plaintiffs allege that there is an express contract between the parties, namely— the extended warranty. (FAC ¶¶ 9, 165, 226, 412–29.) If Honda's TSB extended warranty ultimately governs the parties' dispute, a quasi-contract theory for unjust enrichment "cannot lie." *See Gerlinger*, 311 F.Supp.2d at 856. Pennsylvania and New Jersey law is consistent with this principle. *See Wanaque Borough Sewerage Auth. v. Twp. of W. Milford*, 144 N.J. 564, 574 (1996) (explaining that under New Jersey law that "a quasi-contract is not a contract at all"); *see also Shafer Elec. & Const. v. Mantia*, 626 Pa. 258, 263 (2014) (stating that, under Pennsylvania law, quasi-contract theories are utilized "when a cause of action expressly sounding in contract cannot be sustained").

Honda argues that Plaintiffs' unjust enrichment claim fails because Plaintiffs allege that an express contract governs the same subject matter and fail to allege that they lack an adequate legal remedy. (Mot. 20–21.) However, elsewhere in its Motion, Honda contends that the extended warranty may apply to certain Plaintiffs but not others. (*See id.* at 9–10.) This argument undermines Honda's position that unjust enrichment is categorically barred by the existence of an express contract.

Plaintiffs allege that they assert an unjust enrichment claim "as an alternative to the contractual warranty claims" in the event their contractual claims "cannot be enforced" against Honda. (FAC ¶ 448.) Plaintiffs' unjust enrichment claim may be pled in the alternative. *See, e.g.*, *Astiana*, 783 F.3d at 762 (holding that, under California law, a party may set out two or more statements of a claim alternatively); *United States v. Kensington Hosp.*, 760 F. Supp. 1120, 1135 (E.D. Pa. 1991) (finding that, under Pennsylvania law, plaintiffs may "pursue alternative theories of recovery based both on breach of contract and unjust enrichment, even when the existence of a contract would preclude recovery under unjust enrichment"); *Torres-Hernandez v. CVT Prepaid Sols., Inc.*, No. 3:08-CV-1057-FLW, 2008 WL 5381227, at *8 (D.N.J. Dec. 17, 2008) (stating that, under New Jersey law, plaintiffs "are clearly permitted to plead alternative theories of recovery").

At the pleading stage, Plaintiffs' allegations are sufficient to assert unjust enrichment in the alternative to their warranty claims. If Honda's extended warranty ultimately governs the parties' dispute, Plaintiffs may not recover under a quasi-contract theory. However, if the extended warranty does not apply to certain Plaintiffs or does not cover the alleged Paint Defect, an alternative claim for restitution may still be available. The Federal Rules permit pleading such alternative theories of liability. Fed. R. Civ. P. 8(d)(2).

Accordingly, the Court **DENIES** Honda's motion to dismiss Plaintiffs' unjust enrichment claim.

20

## V.    CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Honda's Motion to Dismiss.  (Dkt. No. 47.)  Specifically, the Court **STRIKES** all new claims (Counts 6–11) and the addition of all new Plaintiffs in the First Amended Complaint **WITHOUT LEAVE** and **WITHOUT PREJUDICE**.  The Court **GRANTS** the Motion and **DISMISSES** Clemmens's UTPCPL claim (Count 4) **WITHOUT LEAVE TO AMEND**, Toussaint's NJCFA claim (Count 5) and Plaintiffs' fraudulent concealment claims (Count 13) **WITH LEAVE TO AMEND**, and Plaintiffs' breach of express warranty claim (Count 12) **WITH LEAVE TO AMEND** as to Clemmens, and **WITHOUT LEAVE TO AMEND** as to Toussaint. The Court **DENIES** Honda's Motion in all other respects.

Plaintiffs may amend as specified above to cure the identified deficiencies.  If Plaintiffs choose to amend, they must do so within **twenty-one (21) days** of the date of this Order, in which case Honda shall answer or otherwise respond within **fourteen (14) days** of the filing.  If Plaintiffs choose not to amend, all claims dismissed with leave to amend shall be deemed dismissed with prejudice as of the lapse of the deadline to amend.  In that event, Honda shall answer within **fourteen (14) days** of the lapsed deadline.

**IT IS SO ORDERED.**

March 18, 2026

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

21